tain what were the qualifications of the persons upon whose exertions the success of the adventure depended. If, without fraud on their part, their qualifications for the service proved to be less than the master expected, he had, on that account, no right to break up the adventure, and deprive them of the opportunity of earning what they could.

It may be urged that as it was the vessel's interest, and the chief object of the voyage, to catch as many fish as possible, the fact that the master relinquished the enterprise should be taken as proof that its further prosecution with the crew under his command would be a useless waste of time and money. But it is to be recollected that the vessel had already received from the Constitution nearly half a cargo of fish, on which the men were not entitled to any lay. She had also made a freighting voyage to Petropoloski, and back to the fishing grounds, for which the men were to receive no wages except for the period of eighteen days. She had thus carried out a cargo of freight, and was about to carry back half a cargo of fish, without any expense for seamen's wages, except for the period of eighteen days just mentioned. It may be, therefore, that under these circumstances the master relinquished the further prosecution of an enterprise which, if its whole profits to the ship had depended on the catch by the men, he would have continued.

Testimony was offered to show that the men assented to the abandonment of the voyage. This is strenuously denied by them, and the evidence in support of the assertion is inconclusive and unsatisfactory.

On the whole, I incline to the conclusion that the master had no right, under the circumstances, to abandon the voyage, and that the men are entitled to damages for his doing so. On the other hand, there can be no doubt that the men were very deficient in skill or diligence, or in both. They have no claim to any peculiarly favorable consideration by the court, and their recovery should be restricted to what they probably would have earned had the enterprise been prosecuted up to the time when it might have been reasonably and properly brought to a conclusion. Their claim to be paid as if the vessel had obtained by their exertions a full cargo of fish I reject as founded upon an hypothesis which would not have been in fact realized. The fishing season seems ordinarily to last until towards the end of August, or the beginning of September. If the master had remained until the 25th August, I think he would have afforded all the opportunity to fish to which the men were entitled, unless there had been a signal improvement in their efficiency, which there is no reason to suppose would have occurred.

I shall, therefore, allow to each of the libellants the damages he may be presumed to have sustained by reason of being deprived of the opportunity to fish for a period of twenty-five days. The number of fish that he might or would have taken during that time to be ascertained by computing his average catch per diem for the twenty-five days preceding the actual termination of the fishing, and allowing him a similar catch for the succeeding twenty-five days. Upon the catch of each man, as thus ascertained, he is to be allowed twenty-five dollars per thousand. For these amounts, together with balances admitted to be due the men on a settlement of their accounts, a decree will be entered.

A reference will be had to the commissioner to ascertain and report the total amount due each of the libellants respectively, unless the parties can agree upon the computation on the basis laid down in this opinion.

PAGE (BARGH v.). See Case No. 980.

## Case No. 10,661.

### PAGE v. BRACKENRIDGE et al.

[Cited in Whiting v. Bank of U. S., Case No. 17,576. Nowhere reported; opinion not now accessible.]

PAGE (BUCKLEY v.). See Case No. 2,094.

PAGE (CHICAGO, B. & Q. R. CO. v.). See Case No. 2,668.

PAGE (ELASTIC TRUSS CO. v.). See Case No. 4,325.

## Case No. 10,662.

### PAGE v. FERRY.

[1 Fish. Pat. Cas. 298.] [1]

Circuit Court, E. D. Michigan. Oct., 1857.

PATENTS—SPECIFICATION—FAIR DISCLOSURE—CONSTRUCTION—INTENTION OF INVENTOR—UTILITY—IMPROVEMENT—IDENTITY.

1. A patent may be considered in the light of a deed from the government, and the patentee is bound to communicate his invention in so full and clear a manner, that it shall be within the comprehension of the public at the expiration of the term.

2. The specification is intended to teach the public the improvement patented; it must fully disclose the secret; must give the best mode known to the inventor; and contain nothing defective, or that would mislead artists of competent skill in the particular manufacture.

3. It is a question of fact for the jury, whether the description in the patent is so vague or uncertain that a competent workman, in the particular business to which the patent relates, could not, from the specification and drawing, construct the machine.

4. In the construction of a patent, the intention of the inventor, so as to effect the object designed, is to govern the construction of the language employed. The court will look to the manifest design in order to remove any ambiguity arising from the terms employed; but this ambiguity must not be such as would perplex

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]